*42 OPINION
By the Court,
Leavitt, L:
These two cases have been consolidated on appeal. NRAP 3(b). Both appellants are former members of the Nevada Legislature who claim that they are entitled to certain retirement benefits pursuant to Assembly Bill 820 (hereinafter “A.B. 820”) passed by the 1989 session of the Nevada Legislature, which modified provisions of the Legislators’ Retirement Law stated in NRS chapter 218. See 1989 Nev. Stat., ch. 481. A.B. 820 quadrupled the amount of benefits a retired legislator may receive.
Former Governor Miller vetoed A.B. 820, but his veto was overridden the same day by the legislature. The public expressed outrage over the legislators increasing their own retirement benefits, but former Governor Miller announced he would not call a special session to repeal the law. However, the public clamor increased, and the former Governor called a special session of the legislature for the sole purpose of repealing A.B. 820. The legislature convened and repealed the law.
A.B. 820 was the law of Nevada for approximately five months, from June 23, 1989, the date the legislature overrode the Governor’s veto, to November 21, 1989, when the law was repealed. Both appellants retired during this period of time and received the increased retirement benefits until A.B. 820 was repealed. After A.B. 820 was repealed, the Public Employees’ Retirement Board notified appellants that their pension benefits would be reduced.
Appellants filed actions, claiming a vested right to the increased benefits of A.B. 820. They asserted that the repeal of A.B. 820 violated the Contracts Clause of the United States Constitution by denying them protection from impairment of contract. After motions and cross-motions for summary judgment were filed, the district court in both cases granted summary judgment for respondents.
We have previously examined the ramifications of A.B. 820. We held that article 4, section 33 of the Nevada Constitution forbids any increase in compensation for members of the legislature during their natural term of office. A.B. 820 was repealed prior to the expiration of a sitting legislator’s term of office. Therefore, any increased pension benefits did not vest and there was no impairment of any vested contract rights. See Mello v. Woodhouse, 110 Nev. 366, 872 P.2d 337 (1994).
The facts in this case are different. Both appellants are former members of the Nevada Assembly. David D. Nicholas served four *43 terms (eight years) in the Nevada Assembly, from January 1981 through December 1988. He declined to run for re-election in 1988. Robert G. Craddock served eight terms (sixteen years) from January 1, 1973, through December 1988. He was defeated in his bid for re-election in 1988. Therefore, neither appellant was a sitting member of the legislature when A.B. 820 was enacted.
Nicholas requested an application for retirement and submitted it to the Public Employees’ Retirement Board on September 15, 1989. At the time of submittal, A.B. 820 was still the law in Nevada. Pursuant to the formula, he received $1,147.94 per month for two months, September and October 1989. Thereafter, his retirement benefit was reduced to $284.67 per month, the preA.B. 820 rate.
Robert G. Craddock’s effective retirement date was November 1, 1989. His first check was a pro rata amount based on A.B. 820. His monthly benefit was $1,344.63 under the new law. After the repeal of A.B. 820, his benefit dropped to $325.65 per month.

DISCUSSION

The standard of review of an appeal from a summary judgment is de novo. See Maine v. Stewart, 109 Nev. 721, 726, 857 P.2d 755, 758 (1993); Walker v. American Bankers Ins., 108 Nev. 533, 536, 836 P.2d 59, 61 (1992). Additionally, “[q]uestions of law are reviewed de novo.” SHS v. United Exposition Services Co., 109 Nev. 28, 30, 846 P.2d 294, 295 (1993). There is no dispute concerning the facts in this case.
We have previously recognized that the vesting of pension benefits can either be limited or absolute.
Appellants argue that before the vesting of an employee’s right to receive pension benefits or retire early, the Legislature may modify the terms and conditions of receiving such benefits without impairing any contractual obligations. Historically, pension benefits were treated as gratuities subject to alteration, amendment, and repeal without any constitutional ramifications. The modern and better-reasoned view recognizes that employees accept their positions, perform their duties, and contribute to the retirement fund in reliance upon the governmental employer’s promise to pay retirement benefits and permit early retirement if certain conditions are met. By rendering services and making contributions, an employee acquires a limited vested right to pension benefits which may not be eliminated or substantially changed by unilateral action of the governmental employer to the detriment of the member.
*44 The limited vesting theory is premised on the principle that a pension is an element of compensation and thus part of the employment contract. A pension right may not be destroyed without impairing the contractual obligation of the public employer. However, prior to absolute vesting, pension rights are subject to reasonable modification ....
Public Emp. Ret. v. Washoe Co., 96 Nev. 718, 721-22, 615 P.2d 972, 974 (1980) (citations omitted; footnote omitted; emphasis added).
Thus, there are limited vested rights which can be modified and absolute vested rights which cannot be modified. Other jurisdictions have so ruled. See Pasadena Pol. Off. Ass’n v. City of Pasadena, 195 Cal. Rptr. 339 (Ct. App. 1983); LA. State Troopers v. LA. State Police, Etc., 417 So. 2d 440 (La. Ct. App. 1982); Campbell v. Michigan Judges Retirement Board, 143 N.W.2d 755 (Mich. 1966).
The difference between limited and absolute vested rights centers around the time when the retirement benefits have been folly earned or the date of retirement, that is, when the benefits are paid.
Until an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived; it has ripened into a foil contractual obligation.
Police Pension and Relief Board of Denver v. McPhail, 338 P.2d 694, 700 (Colo. 1959) (quoting Retirement Board of Allegheney County v. McGovern, 174 A. 400 (Pa. 1934)). Respondent Public Employees’ Retirement Board asserts that the legislature has the authority to alter a person’s retirement benefit at any time, even after they retire. This is in direct contradiction to the position previously taken by the Board in Mello v. Woodhouse, 110 Nev. 366, 371, n.10, 872 P.2d 337, 340 (1994). In Mello, the Board acknowledged that legislators who had already completed their term prior to the repeal of A.B. 820 would have absolutely vested under A.B. 820. An employee’s rights become absolutely vested when he retires and all conditions for his retirement benefits have been met. That right is constitutionally protected against impairment once absolutely vested. “No state may pass a law impairing the obligation of contracts. U.S. Const. art. I, § 10; Nev. Const. art. 1, § 15. Public employment contracts are within the ambit of *45 the contract clause.” Public Emp. Ret., 96 Nev. at 721, 615 P.2d at 974 (citing Singer v. City of Topeka, 607 P.2d 467 (Kan. 1980)).
Public employees perform their duties, in reliance on the state paying retirement benefits when certain conditions are met. When those rights become absolutely vested, a contract exists between the employee and the state which cannot be modified by unilateral action on the part of the legislature. The repeal of A.B. 820 impaired the obligation of the state to pay the increased pension benefits to these appellants.
Adopting a rule that would allow the legislature to alter pension benefits after they have absolutely vested simply to bar these appellants from taking advantage of the short window of opportunity when A.B. 820 was the law would undermine the validity of contractual benefits for all public employees. We are unwilling to create a precedent that would impair thousands of employees’ rights solely to prevent a few individuals from collecting greater benefits as a result of the passage of A.B. 820.
Accordingly, we reverse the district courts’ summary judgments and remand to the district courts to grant summary judgment in favor of appellants, and to order respondent Public Employees’ Retirement Board to reinstate the retirement benefits of appellants to the amounts allowed under A.B. 820, retroactive to the date of the repeal of A.B. 820.[1]
Rose, C. J., Shearing and Becker, JJ., concur.

The Honorable Deborah A. Agosti, Justice, voluntarily disqualified herself from participation in the decision of these consolidated appeals.